United States District Court
Southern District of Texas
**ENTERED**
August 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| United States of America, *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-24-0646 |
| | § | |
| Royce E. Mitchell, et al., *Defendants*. | § | |

# MEMORANDUM AND RECOMMENDATION AND ORDER

This tax collection case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 76. Pending before the court are Defendants Royce Mitchell and Susan Mitchell's (the Mitchells) Motion for Sanctions, ECF No. 121; the Mitchells' Motion to Dismiss, ECF No. 130; the government's Motion for Summary Judgment, ECF No. 131; Defendant A.I.M. Controls, LLC's Motion to Undeem Admissions, ECF No. 133; the Mitchells and Defendant Steve Croes's Motion to Undeem Admissions, ECF No. 134; the Mitchells and Croes's Letter Motion for Discovery, ECF No. 145; the Mitchells and Croes's Motion for Leave to File Late Response to the Government's Motion for Summary Judgment, ECF No. 155; the government's Motion to Strike, ECF No. 157; the government's Motion to Strike, ECF No. 161; the Mitchells' Motion to Remove Government as Counsel, ECF No. 162; and A.I.M. Controls, LLC's Motion for Leave to File Exhibits A and B, ECF No. 168.

The court recommends that the Mitchells' Motion to Dismiss, ECF No. 130, be **DENIED**.

A.I.M. Controls' Motion to Undeem Admissions, ECF No. 133 is **DENIED**. The Mitchells and Croes's Motion to Undeem Admissions, ECF No. 134, is **GRANTED in part** and

**DENIED in part as moot**. The Mitchells and Croes's Letter Motion for Discovery, ECF No. 145, is **TERMINATED as moot**.

The Mitchells and Croes's Motion for Leave to File Late Response to the government's Motion for Summary Judgment, ECF No. 155 is **GRANTED**. The Mitchells' objections to the government's summary judgment evidence are **SUSTAINED in part** and **OVERRULED in part**. The government's objections to the Mitchells' summary judgment evidence are **SUSTAINED in part** and **OVERRULED in part**, and the government's Motions to Strike, ECF No. 157 and 161, are **GRANTED in part**.

A.I.M. Controls' Motion for Leave to File Exhibits A and B, ECF No. 168, is **GRANTED**.

The court recommends that the government's Motion for Summary Judgment, ECF No. 131, be **GRANTED**.

The Mitchells' Motion for Sanctions, ECF No. 121, is **DENIED**. The Mitchells' Motion to Remove Government as Counsel, ECF No. 162, is also **DENIED**.

### *1. Summary of the Case*

This dispute arises out of tax liability assessments by the Internal Revenue Service (IRS) against Royce and Susan Mitchell for income tax liability during the years 2001 and 2003 to 2009.

On February 23, 2024, the United States government filed this lawsuit pursuant to 26 U.S.C. §§ 7401–03, against Royce and Susan Mitchell for certain assessed, but unpaid, income taxes. ECF No. 1 ¶¶ 8–26. The government also seeks a determination that Defendant A.I.M. Controls is an alter ego of the Mitchells and, as such, is liable for their income tax liabilities. *Id.* ¶¶ 27–56. The government further seeks a determination that the Members of A.I.M. Controls—two trusts, A.I.M. Group and RESAM Holdings (the Trusts)—are holding certain real property as the Mitchells' nominees, such that the United States can enforce its federal tax

liens against that real property. *Id.* Defendant Steve Croes is named in his capacity as trustee of the Trusts. *Id.* ¶ 6.

The court turns next to the pending motions but will first make a few prefatory comments about the briefing and evidence presented to the court. The parties have presented the court with hundreds of pages of briefing and argument and thousands of pages of evidence. The parties have objected to evidence, objected to the other side's filings, and have generally engaged in a highly contentious legal dispute.

Given the substantial volume of evidence, for each of the pending motions, responses, and replies, the court ordered each of the parties to deliver a hard drive or flash drive to the undersigned's chambers containing copies of all exhibits. ECF No. 166. The Mitchells chose not to comply with the court's order and filed objections instead. ECF No. 167. The Mitchells have unilaterally decided what they believe is important and the order of operations for the court to follow. They decided not to provide the court with a copy of their exhibits. Therefore, the court concludes that the Mitchells have forfeited their right to have their exhibits examined and to object on that basis.

That said, the court has read and carefully considered all the parties' filings, and it has reviewed the evidence that the parties have cited—including that of the Mitchells. For reasons of judicial economy, however, the court has not addressed in writing every single argument that the parties have made. To do so would require a monumental effort and would add little to the resolution of the case. The court has addressed only those legal and factual issues that are relevant and material to the resolution of the pending motions. The parties should thus not assume that the court has failed to consider an argument or evidence that is not specifically discussed herein.

The court also fully expects that the parties will object to this Memorandum and Recommendation, which is, of course, permitted. The court reminds the parties, however, that objections do not serve the purpose of making new arguments or citing evidence that the parties regret not citing in their briefs. Objections serve the purpose of pointing out errors. The time to brief the pending motions is passed.

### *2. Subject Matter Jurisdiction and the Mitchells' Motion to Dismiss*

Despite being twice warned and admonished to refrain from making frivolous arguments to the court, the Mitchells continue to assert that the court lacks subject matter jurisdiction. ECF No. 130. The Mitchells apparently still believe that they are not citizens of the United States subject to the provisions of the Internal Revenue Code. *Id.*

In its April 8, 2025 Memorandum and Recommendation,

> The court [made] clear to the Mitchells that their arguments about not being subject to the Internal Revenue Code because they are "Posterity Citizens," that they are entitled to sovereign immunity, or that they are otherwise excepted from the rule of law based on the identity of their ancestors are utterly frivolous.

ECF No. 87 at 11. The court warned and admonished the Mitchells "to refrain from making any further frivolous arguments to the court." *Id.* at 12. Additionally, in his order adopting the undersigned's Memorandum and Recommendation, Judge Eskridge specifically adopted the warning and admonishment to the Mitchells. ECF No. 96 at 3.

The arguments advanced by the Mitchells are nothing more than "shopworn arguments characteristic of tax-protestor rhetoric that ha[ve] been universally rejected by [the Fifth Circuit] and other courts." *United States v. Trowbridge*, 591 F. App'x 298, 299 (5th Cir. 2015) (quoting *Stearman v. Comm'r,* 436 F.3d 533, 537

(5th Cir. 2006)). It is patently frivolous to assert that district courts lack subject matter jurisdiction over tax actions against residents of states. *Id.* (citing *United States v. Masat,* 948 F.2d 923, 934 (5th Cir. 1991)). "26 U.S.C. §§ 7602(a) and 7604, which authorize the issuance and enforcement of IRS summonses, 'are federal laws that the district court has jurisdiction to consider under 28 U.S.C. § 1331.'" *Id.* (quoting *United States v. Henderson,* 209 F. App'x 401, 402 (5th Cir. 2006)). "Moreover, 28 U.S.C. § 1340 explicitly grants district courts jurisdiction in internal revenue cases[,] and 28 U.S.C. § 1345 explicitly grants jurisdiction for civil suits commenced by the United States." *Id.*

Any argument that the Mitchells are not citizens of the United States is "equally frivolous" and entirely meritless. *See Trowbridge*, 591 F. App'x at 299. The court "do[es] not address [their] arguments further as there is 'no need to refute these arguments with somber reasoning and copious citation of precedent . . . .'" *Id.* (quoting *Crain v. Comm'r,* 737 F.2d 1417 (5th Cir. 1984)).

Because the court has subject matter jurisdiction over this federal income tax-collection action, the court recommends that the Mitchells' Motion to Dismiss, ECF No. 130, be **DENIED**.

***3. Motions to Undeem Admissions***

A.I.M. Controls, the Mitchells, and Croes seek to withdraw and amend their deemed admissions to the government's requests for admission. ECF Nos. 133, 134, 145.

***A. Background Facts***

The government served its first set of requests for admission on the Mitchells on November 22, 2024. Notinger Decl. I, ECF No. 131-1 at 138–42, ¶ 3. Responses were due on December 26, 2024, but were not timely served. *Id.* ¶ 4. The Mitchells ultimately mailed their responses to the government's first set of requests for

admission approximately a week and a half later, on January 7, 2026. ECF No. 131-1 at 217, 220.

On June 3, 2025, via mail and email, the government served its first set of requests for admission on A.I.M. Controls, and its second set of requests for admission on the Mitchells and Croes. Notinger Decl. II, ECF No. 135-1 at 1–3, ¶ 2; Gov't Exs. 1A–1C, ECF No. 135-1 at 4–52. Responses were due on July 4, 2025. The Mitchells and Croes timely responded, but A.I.M. Controls did not.

Twelve days after the July 2025 response deadline, Royce Mitchell sat for his deposition. Notinger Decl. II ¶ 3; Gov't Ex. 1D, ECF No. 135-1 at 53. Royce Mitchell testified on his own behalf and as the Rule 30(b)(6) representative of A.I.M. Controls. Gov't Ex. 1D, ECF No. 135-1 at 54. A.I.M. Controls' counsel was present for the deposition. Notinger Decl. II ¶ 3; Gov't Ex. 1D, ECF No. 135-1 at 53. During the deposition, the government showed Royce Mitchell a copy of the letter accompanying its July 3, 2024 discovery request, including the requests for admission, and asked whether he remembered receiving it. Notinger Decl. II ¶ 3; Gov't Ex. 1D, ECF No. 135-1 at 55. Royce Mitchell confirmed that he had. Notinger Decl. II ¶ 3; Gov't Ex. 1D, ECF No. 135-1 at 55.

The discovery period ended on October 31, 2025. ECF No. 89. Seventeen days later, A.I.M. Controls' counsel emailed the government stating that A.I.M. Controls intended to file a motion to undeem admissions. Notinger Decl. II ¶ 5; ECF No. 135-1 at 64–65. It did not, however, file its Motion to Undeem Admissions until almost two and a half months after the email exchange, and two days after the government filed its pending Motion for Summary Judgment. ECF No. 133. The Mitchells and Croes jointly filed a nearly identical motion a few days later and also filed a letter motion seeking the same relief. ECF No. 134, 145.

### *B. Legal Standard*

Under Federal Rule of Civil Procedure 36(a)(3), requests for admission are deemed admitted if the party fails to respond within thirty days. "In form and substance[,] a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party." *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

The Rule further provides that "the court may permit withdrawal or amendment" of deemed admissions "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). Typically, permitting withdrawal or amendment promotes the presentation of the merits when the admissions at issue bear directly on the merits of the case. *Kan. City S. Ry. Co. v. Shan of Monroe LLC*, No. 3:19-CV-01569, 2021 WL 1432918, at *2 (W.D. La. Mar. 18, 2021). However, the Fifth Circuit has determined that even when the first factor of the test is satisfied, "a court acts within its discretion in considering the fault of the party seeking withdrawal, or its diligence in seeking withdrawal." *Le v. Cheesecake Factory Rests. Inc.*, No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007) (citations omitted).

As to the second factor of the Rule 36(b) test, a party is not prejudiced merely because application of the Rule would require the party to prove its case. *Shan of Monroe*, 2021 WL 1432918, at *3. Nor is a party prejudiced if withdrawal or amendment necessitates additional discovery. *Id.* Prejudice may be shown if a party encounters "special challenges" that are caused by a sudden need to obtain evidence upon withdrawal or amendment of a deemed admission. *Id.*

### *C. A.I.M. Controls' Request to Undeem Admissions*

It is undisputed that the admissions at issue bear directly on the merits of the case, which would ordinarily weigh in favor of permitting withdrawal or amendment. However, A.I.M. Controls—the only named defendant represented by counsel—was not diligent in pursuing withdrawal. A.I.M. Controls did not attempt to provide its proposed amended response until it filed the instant Motion, which was more than five months after its response was due and after the close of the discovery period.

Moreover, allowing withdrawal and amendment of A.I.M. Controls' deemed admission would prejudice the government. The government has relied on the deemed admissions, including in the preparation of its pending Motion for Summary Judgment. A.I.M. Controls' offer to simply allow additional depositions would not cure that prejudice because the discovery and motions deadlines have passed.

For these reasons, A.I.M.'s Motion to Undeem Admissions, ECF No. 133 is **DENIED**.[1]

### *D. The Mitchells and Croes's Request to Undeem Admissions*

The Mitchells and Croes's Motion to Undeem Admissions is substantively similar to that of A.I.M. Controls. It also appears to be directed at the requests for admission served by the government on July 3, 2025. ECF No. 133, 134. In contrast to A.I.M. Controls' failure to respond, however, the Mitchells and Croes did timely respond to the July 3, 2025 set of requests for admission, so they were not deemed admitted against them.

---

[1] The court notes, however, that it does not rely on A.I.M. Controls' deemed admissions in its summary judgment analysis.

The July 3, 2025 set of requests for admission is the only set of requests for admission that were served on Croes. Accordingly, for him, there are no deemed admissions to which to apply Rule 36(b). To the extent that the Mitchells and Croes's Motion to Undeem Admissions, ECF No. 134, seeks to undeem admissions of Croes, the Motion is **DENIED in part as moot**.

The Mitchells, however, failed to timely respond to the government's first set of requests for admission—the set served on November 22, 2024. Because the Mitchells represent themselves pro se, the court exercises its discretion to construe the instant Motion to Undeem Admissions, ECF No. 134, as a request to undeem first set of requests for admission served on the Mitchells.

The Mitchells served their responses to the government's November 22, 2024 request for admissions less than two weeks after they were due. Despite their tardiness, the Mitchells appear to have otherwise attempted to comply with the government's discovery requests.

The admissions at issue bear directly on the merits of the case against the Mitchells. The first factor of the Rule 36(b) test is satisfied. Moreover, the Mitchells' responses were only slightly delayed and were provided to the government well in advance of the discovery deadline. Given the substantial volume of evidence in this case, application of Rule 36(b) will not cause the government to encounter "special challenges." The government will not be prejudiced. For these reasons, the Mitchells and Croes's Motion to Undeem Admissions, ECF No. 134, is **GRANTED in part** to permit the withdrawal and amendment of the first set of requests for admission served on the Mitchells.

Like the relief sought in the Mitchells and Croes's Motion to Undeem Admissions, the Mitchells and Croes's Letter Motion also "respectfully ask[s] that the admissions Plaintiff seeks to deem be

withdrawn." ECF No. 145. Accordingly, the Letter Motion, ECF No. 145, is **TERMINATED as moot**.

***4. Motion for Summary Judgment***

The government has moved for summary judgment against the Mitchells and A.I.M. Controls. ECF No. 131. It seeks summary judgment that (1) the Mitchells are liable to the United States for the income tax assessments against them; (2) A.I.M. Controls is also liable as the alter ego of the Mitchells; and (3) the liens for the Mitchells' tax liabilities attach to the Anderson Properties, such that the liens may be enforced and the properties sold. *Id.* at 42.

***A. Summary Judgment Standard***

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d

536, 540 (5th Cir. 2005)). The court does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

The court reviews the evidence and makes reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* (citing *Matsushita,* 475 U.S. at 586–87). "The mere existence of *some* alleged factual dispute between the parties" is insufficient. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

***B. Evidentiary Objections***

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials

cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'").

#### *i. Defendants' Objections to the Declarations of Brett Crow, Miguel Pineda, and Chandy Thomas*

The Mitchells, Croes, and A.I.M. Controls object to various portions of the Declarations of Brett Crow, Miguel Pineda, and Chandy Thomas. At the time of their respective Declarations, Crow, Pineda, and Thomas were revenue officers or agents with the IRS. Crow Decl., ECF No. 131-1 at 122; Pineda Decl., ECF No. 131-1 at 290; Thomas Decl., ECF No. 131-5 at 228.

The Mitchells accuse the Defendants' Declarations of containing perjured testimony and assert that the agents "do not swear as to the accuracy of the information contained in their Declarations." ECF No. 151 at 2–3. However, each statement contains a declaration "under penalty of perjury that the foregoing is true and correct." Crow Decl., ECF No. 131-1 at 130; Pineda Decl., ECF No. 131-1 at 310; Thomas Decl., ECF No. 131-5 at 232. That is sufficient under 28 U.S.C. § 1746. Moreover, the Mitchells have not provided any evidence to support their allegations of perjury. Defendants' objections to the Declarations on that basis are **OVERRULED**.

Defendants also object on the basis of alleged lack of personal knowledge. Each of the declarants reviewed IRS records and formulated their testimony based on their review and their knowledge and experience as revenue officers. To the extent that Defendants' object to the Declarations on the basis of lack of personal knowledge, the objections are **OVERRULED**.

Defendants object to certain statements contained within the Declarations. The court carefully reviewed each Declaration. Portions of the Declarations contain legal conclusions. *E.g.*, Pineda Decl., ECF No. 131-1 at 308 ¶ 39 ("[T]he Mitchells formed and used

A.I.M. [Controls] only for the purpose of tax avoidance . . . ."). Other statements within the Declarations constitute opinions. *E.g.*, Pineda Decl., ECF No. 131-1 at 303 ¶ 38 ("Due to Royce Mitchell's *abusive* tax avoidance transactions and tactics . . . .") (emphasis added); Thomas Decl., ECF No. 131-5 at 228 ("Mr. Mitchell purchased through the internet a *bogus* trust package . . . .") (emphasis added). Some of the opinions are inflammatory. *E.g.*, Pineda Decl., ECF No. 131-1 at 294 ¶ 10 ("[The Mitchells] use A.I.M. Controls, LLC as a personal piggy bank, living through the entity to shelter their personal assets from IRS collection."). Defendants' objections on those grounds are **SUSTAINED in part.** The court excludes from its consideration any statement, or portion of a statement, that constitutes a legal conclusion or unsupported opinion of the testifying agent.

A.I.M. Controls also objects to mentions of the DOJ press release about Innovative Financial Consultants (IFC). *E.g.*, ECF No. 147 at 22 (referring to ECF No. 131-3 at 21–22). Because the court does not rely on the press release or any other information about IFC, all objections on this basis are **OVERRULED**.

Overruling the remaining objections of the Defendants does not have any material effect on the resolution of the motion for summary judgment. Nor does it prejudice the Defendants. As such, the Defendants' remaining objections are **OVERRULED**.

***ii. The Government's Objections to Royce Mitchell's Declarations***

The government asks the court to strike Royce Mitchell's First Declaration, ECF Nos. 148-8, 158-3 at 23–57, and Second Declaration, ECF No. 151-2 at 58–91. The government argues that both declarations "falsely accuse[] IRS employees of perjury" and "Government counsel of subornation of perjury" without references to the record to support the accusations. ECF No. 157 at 3. Additionally, the government asserts that both declarations

should be stricken because they were not submitted in good faith. *Id.* at 5.

The government's Motions to Strike, ECF No. 157 and 161, are **GRANTED in part**. The court **STRIKES** the portions of Royce Mitchell's Declarations that contain allegations of perjury committed by the IRS and the government's counsel. There is no evidence to substantiate any allegation of perjury. The Mitchells simply disagree with the government's case. To be clear, however, even though the court strikes those portions of the First and Second Declarations, the court accepts as true all factual evidence presented by the Mitchells.

The remaining relief sought in the government's Motions to Strike, ECF No. 157 and 161, is **DENIED**. Overruling the government's objections as to bad faith does not have any material effect on the resolution of the motion for summary judgment. Nor does it prejudice the government. As such, the government's objections on that basis are **OVERRULED**.

### *C. Background Facts*

Royce and Susan Mitchell founded A.I.M. Controls in 1992. Susan Mitchell Dep., ECF No. 131-4 at 7; Royce Mitchell Dep., ECF No. 131-5 at 123. A.I.M. Controls labels itself as a "one-stop source for all things related to the sales, diagnosis & repair, and new design of machine controls." ECF No. 131-3 at 52. After operating the company for about five years, the Mitchells decided to place their ownership interests in A.I.M. Controls into two irrevocable trusts.

#### *i. Creation of the Trusts*

In September 1997, the Mitchells created two irrevocable trusts—A.I.M. Group and RESAM Holdings (the Trusts). A.I.M. Group Formation, ECF No. 131-3 at 23–35; RESAM Formation, ECF No. 131-3 at 36–48. Susan Mitchell's 50% interest in A.I.M.

Controls was transferred to one of the Trusts, and Royce Mitchell's 50% interest was transferred to the other. Royce Mitchell Dep., ECF No. 131-5 at 114–15; A.I.M. Group Formation, ECF No. 131-3 at 35; RESAM Formation, ECF No. 131-3 at 48. The Trusts did not pay consideration to the Mitchells in exchange for the trust property—the entirety of the Mitchells' ownership interest in A.I.M. Controls. Royce Mitchell Dep., ECF No. 131-5 at 114. Royce Mitchell's five children, and their children, are beneficiaries of RESAM Holdings, and Susan Mitchell's child, and his children, are beneficiaries of A.I.M. Group. A.I.M. Group Formation, ECF No. 131-3 at 24; RESAM Formation, ECF No. 131-3 at 37.

The Trusts' formation documents permit the trustee to distribute Trust assets to the respective beneficiaries. A.I.M. Group Formation, ECF No. 131-3 at 24; RESAM Formation, ECF No. 131-3 at 37. However, the documents specifically state that the Mitchells, as Grantors, "shall have no further right, title, and/or interest in the Trust Property and/or any money derived from it." A.I.M. Group Formation, ECF No. 131-3 at 34; RESAM Formation, ECF No. 131-3 at 47.

The Mitchells selected Clifford William to serve as trustee of RESAM, and Defendant Steve Croes to serve as the trustee of A.I.M. Group. A.I.M. Group Formation, ECF No. 131-3 at 28; RESAM Formation, ECF No. 131-3 at 41. William eventually resigned and appointed Croes as replacement trustee. Mitchells Ex. R, ECF No. 151-2 at 28.

As of July 2025, Croes remained the trustee of both Trusts. He is paid a yearly fee of $200 from each Trust to serve as trustee. Susan Mitchell Dep., ECF No. 131-4 at 11; Royce Mitchell Dep., ECF No. 131-5 at 39. Despite his role, Croes's deposition testimony reflected that he has limited knowledge of the Trusts. Croes was not able to list the Trusts' respective assets, name their beneficiaries, or recall the amount of the annual fees that he is

paid. Croes Dep., ECF No. 131-3 at 157, 159–60. He testified that he could not remember whether he had ever made a deposit into the Trusts' bank accounts, and he stated, incorrectly, that he thought he was the only signatory on the Trusts' accounts. *Id.* at 158–89. Moreover, while Croes produced voluminous discovery on behalf of A.I.M. Controls, Royce Mitchell had to let Croes into the company's office to obtain the documents. *Id.* at 151.

#### *ii. The Mitchells involvement in A.I.M. Controls after creation of the Trusts*

In early January 1998, William and Croes, in their roles as trustees, signed an Operating Agreement for A.I.M. Controls, which named the Mitchells the company's "Managers." Mitchells Ex. A, ECF No. 151-1 at 4. Under the Operating Agreement, the Mitchells were given

> complete authority . . . for all day to day operations of [A.I.M. Controls], including contracting for legal issues or representation, establish[ing] bank accounts, and committing [A.I.M. Controls] to any purpose for which [it] was created including but not limited to the purchase of materials, machinery and real property.

*Id.* The Operating Agreement also states that if the Mitchells, as Managers, disagree on a matter related to the company's "day to day operations," they "shall seek the advice and consent of the Member[]" Trusts. *Id.*

Later that month, Royce Mitchell registered A.I.M. Controls as an LLC in the State of Texas. Royce Mitchell Dep., ECF No. 131-5 at 121. He personally drafted and filed A.I.M. Controls' Articles of Organization with the Office of the Secretary of State of Texas. *Id.*; Arts. Org., ECF No. 131-5 at 180–86. The Articles list Royce Mitchell as the company's "Registered Agent," and the Trusts as "Organizer[s]." Arts. Org., ECF No. 131-5 at 180. The Articles are signed by both of the Mitchells as "Managing

Director[s]" of the Trusts. *Id.* at 181. William and Croes are not mentioned.

At the end of January 1998, William and Croes, representing the Member Trusts, and the Mitchells, as Managers, signed a one-page "contract related to the payment of [A.I.M. Controls'] profit to [Royce] and Susan [Mitchell]." Mitchells Ex. A, ECF No. 151-1 at 5. The contract states that "the profit from A.I.M. Controls will flow through to the [T]rusts, who then, after deducting costs of maintaining the [T]rusts, will transfer remaining profits to [the Mitchells] as income on which [the Mitchells] will pay any applicable income taxes." *Id.* The contract also states that A.I.M. Controls "will pay all health maintenance costs for" the Mitchells, but that it "shall not pay for any personal expenses from company funds." *Id.* It explains that Mitchells work for the company as volunteers, not as employees. *Id.*

The evidence shows that the Mitchells are not considered employees of A.I.M. Controls, and they are not included on the company's payroll. Susan Mitchell Dep., ECF No. 131-4 at 5, 17, 35. Royce Mitchell and Susan Mitchell each receive a monthly "distribution," in excess of $1,000, from one of the Trusts. *Id.* at 5, 40. There is no evidence to suggest, however, that the distribution is equal to or related to the profits mentioned in the 1998 contract, and, as discussed below, the Mitchells receive additional "income" from both A.I.M. Controls and the Trusts.

During his July 2025 deposition, Royce Mitchell stated that he and Susan Mitchell "are volunteer managers [at A.I.M. Controls,] working under the direction of Mr. Croes." Royce Mitchell Dep., ECF No. 131-5 at 39. Croes, however, testified that he does not know "a whole lot" about A.I.M. Controls, because the company "ha[s] managers for that." Croes Dep., ECF No. 131-3 at 162. Croes was unable to correctly identify details about the

business, including the Mitchells' current roles within the company. *Id.* at 158.

In contrast to Royce Mitchell's characterization, the overwhelming weight of the evidence indicates that the Mitchells have exerted, and continue to exert, substantial control over all aspects of A.I.M. Controls. Susan Mitchell testified that she has continuously served as A.I.M. Controls' office manager since its founding in 1992. Susan Mitchell Dep., ECF No. 131-4 at 5. Royce Mitchell has represented himself as holding various positions within the company over time, including Managing Partner, Chief Executive Officer (CEO), Chief Executive Manager, Managing Director, Registered Agent, and Electrical Engineer. Royce Mitchell Dep., ECF No. 131-5 at 151; *see, e.g.*, Mitchells Ex. A, ECF No. 151-1 at 4 (designating Royce Mitchell as "Chief Executive Manager" in the 1998 Operating Agreement); Royce Mitchell Dep., ECF No. 131-5 at 120 (admitting that Royce Mitchell told the Grantor–Bank that he was A.I.M. Controls' CEO throughout the 2004 purchase of real property); Mechs. Lien Aff., ECF No. 131-5 at 207–08 (representing, in 2017, that Royce Mitchell is "Managing Partner").

Regardless of their official titles, the Mitchells have consistently shared the role of making company hiring decisions. Susan Mitchell Dep., ECF No. 131-4 at 8. Susan Mitchell testified that she has hired two of the Mitchell children in administrative roles, as well as the employees on the accounting team, while Royce Mitchell has hired technicians and salesmen. *Id.* at 48.

The Mitchells have access to Croes's signature stamp and have used it on several occasions. Royce Mitchell Dep., ECF No. 131-5 at 39, 124. Susan Mitchell testified that she prepares form letters for Trust dividends, and on Croes's instruction, she affixes Croes's signature to those letters. Susan Mitchell Dep., ECF No. 131-4 at 30. Royce Mitchell admitted that he "may have"

affixed Croes's signature stamp to various entity tax returns and other required business filings. Royce Mitchell Dep., ECF No. 131-5 at 129–32, 161. However, the Mitchells and Croes each stated that Croes's signature stamp is used only with his approval *Id.* at 39; Susan Mitchell Dep., ECF No. 131-4 at 21, 30–31; Croes Dep., ECF No. 131-3 at 163.

The Mitchells opened bank accounts for the Trusts, and they are the only signatories listed on the current and former bank accounts for A.I.M. Controls. Susan Mitchell Dep., ECF No. 131-4 at 13, 37; Royce Mitchell Dep., ECF No. 131-5 at 142, 161. Despite his role as trustee, Croes is not a signatory on the A.I.M. Controls accounts. Royce Mitchell Dep., ECF No. 131-5 at 142. Moreover, Croes does not have access to the physical checkbooks for A.I.M. Controls or the Trusts, and he has never signed a check on behalf of the company. Susan Mitchell Dep., ECF No. 131-4 at 13–14.

Croes testified—inaccurately—that Royce Mitchell is responsible for A.I.M. Controls' finances. Croes Dep., ECF No. 131-3 at 158. When asked specific questions about the company's finances, Croes stated that he did not know who prepares the company's payroll checks and balance sheets. *Id.* at 175. He was unable to identify which employee receives the largest amount of income from the company. *Id.* at 175–76. He could not identify the company's assets or the accounting system that it uses. *Id.* at 176. And he was unable to recall having seen A.I.M. Controls' check register at any point in time. *Id.*

In reality, Susan Mitchell and an A.I.M. Controls employee, Jacqueline Guevara, perform accounting functions for the company. Susan Mitchell Dep., ECF No. 131-4 at 11. Susan Mitchell testified that she and Guevara have access to the physical checkbooks for A.I.M. Controls and the Trusts, which are kept in A.I.M. Controls' office. *Id.* at 13. For checks written out of those accounts, either Susan Mitchell or Guevara stamps each check

with Royce Mitchell's signature. *Id* at 11; Royce Mitchell Dep., ECF No. 131-5 at 125, 159. The Mitchells state that only they and Guevara have access to Royce Mitchell's signature stamp. Susan Mitchell Dep., ECF No. 131-4 at 11; Royce Mitchell Dep., ECF No. 131-5 at 125. They admit that they have written checks to themselves out of the Trusts' accounts, but they assert that they have only done so with Croes's permission. Royce Mitchell Dep., ECF No. 131-5 at 148.

The government questioned Royce Mitchell and Croes about several years of tax filings for A.I.M. Controls and the Trusts. Royce Mitchell Dep., ECF No. 131-5 at 129–33; Croes Dep., ECF No. 131-3 at 179-82. Royce testified that he had never filled out a Form 941 tax return for A.I.M. Controls, and he did not know who completed them. Royce Mitchell Dep., ECF No. 131-5 at 133. Croes, however, testified that one of the Mitchells "probably" prepared them. Croes Dep., ECF No. 131-3 at 225. As to the Trusts, Royce Mitchell could not be certain whether he or Croes had affixed Croes's signature stamp to the tax forms. Royce Mitchell Dep., ECF No. 131-5 at 129–32. He was also uncertain about whether he or Croes had prepared the Trusts' tax filings. *Id.* Croes testified that he also did not know who filled out the Trusts' tax returns, but he conceded that it looked like his signature stamp had been used on the documents. Croes Dep., ECF No. 131-3 at 179–82.

***iii. The Mitchells' Use of Business Funds***

The Mitchells assert that the monthly "distributions" that they receive from the Trusts are the only income that they receive from the business entities. However, the evidence shows that the Mitchells manage and control the business entities' bank accounts and have used those accounts to pay their personal expenses.

The Mitchells do not personally own any vehicles. Susan Mitchell Dep., ECF No. 131-4 at 9. Instead, they both drive vehicles owned by, and titled to, the Trusts. *Id.* at 9, 21. The Mitchells have exclusively operated several different vehicles owned by the Trusts over the years. *Id.* at 9; Royce Mitchell Dep., ECF No. 131-5 at 135. The vehicles' insurance is also paid out of the Trusts. Susan Mitchell Dep., ECF No. 131-4 at 40. Susan Mitchell testified that she and Royce Mitchell are the ones who personally go to the dealership and purchase the vehicles using funds from the Trusts. *Id.* at 10. In 2017, the A.I.M. Group Trust purchased a new vehicle, which is the Ford Explorer currently driven by Susan Mitchell. Royce Mitchell Dep., ECF No. 131-5 at 147. Sometime after the instant lawsuit was filed, Royce Mitchell obtained a new pickup truck, which is titled to RESAM. *Id.* at 146–47. To purchase the truck, Royce Mitchell explained that he personally initiated a wire transfer from one of the business bank accounts, but he could not recall which bank account he used to do so. *Id.* at 147. Royce Mitchell also stated that the Mitchells each have a key to both vehicles. *Id.* at 147.

The Mitchells admit to using trust-owned vehicles for business and personal travel, including trips to the pharmacy, grocery store, and movie theater. Susan Mitchell Dep., ECF No. 131-4 at 9; Royce Mitchell Dep., ECF No. 131-5 at 148. Susan Mitchell testified that she does not keep a mileage log for the vehicle she operates, and she did not do so for earlier vehicles. Susan Mitchell Dep., ECF No. 131-4 at 9–10. The Mitchells both testified that Royce Mitchell does not keep a mileage log for the vehicle he uses. *Id.* at 17; Royce Mitchell Dep., ECF No. 131-5 at 147. Despite the testimony that Royce Mitchell does not keep a mileage log, the Mitchells provided, as exhibits to their response to the government's Motion, three of Royce Mitchell's "Trip Logs"

for the months of September 2015, June 2021, and August 2022. Mitchells Ex. X, ECF No. 151-2 at 48–50.

During their depositions, the government questioned the Mitchells about personal expenses that appeared to have been paid from the accounts of A.I.M. Controls and the Trusts. Susan Mitchell testified that she has used funds from A.I.M. Controls at a nail salon on multiple occasions. Susan Mitchell Dep., ECF No. 131-4 at 19, 35–36. While Susan Mitchell initially denied using the business accounts at a hair salon, she later admitted that she has used company funds to get her hair done several times. *Id.* A.I.M. Controls' financial records reflect additional purchases, on several occasions each, for movie tickets, fast food, and various "gifts" that Susan Mitchell was unable to specifically identify. *Id.* at 19, 35–37. Susan Mitchell stated that in July 2017, the Mitchells were stressed, so Croes approved them to go to the movie theater "every so often." *Id.* at 34. On at least one occasion, the company also paid for Royce Mitchell's dry cleaning and a county clerk recording fee related to Susan Mitchell's mother's property, and it made an unidentified $200 payment to Susan Mitchell's mother's trust. *Id.* at 35–36.

As to the Mitchells' health care, Susan Mitchell initially testified that A.I.M. Controls pays only for the Mitchells' vision and dental insurance. Susan Mitchell Dep., ECF No. 131-4 at 17. However, she later admitted that A.I.M. Controls has also paid for the Mitchells' personal health insurance, and the costs of Royce Mitchell's chiropractic visits—allegedly related to a workplace injury. *Id.* at 55; Royce Mitchell Dep., ECF No. 131-5 at 156. Similarly, Royce Mitchell testified that A.I.M. Controls or the Trusts have paid for the couple's health insurance. Royce Mitchell Dep., ECF No. 131-5 at 149. Susan Mitchell testified that one of the Trusts purchased a life insurance policy on her life—an $8,500 expense. Susan Mitchell Dep., ECF No. 131-4 at 17, 39.

The business bank accounts have also been used to cover expenses related to the Mitchells' personal home. Royce Mitchell Dep., ECF No. 131-5 at 148–49. Susan Mitchell stated that the Trusts paid flood and wind insurance costs and property tax assessments for the Mitchells' home. Susan Mitchell Dep., ECF No. 131-4 at 39–40. Susan Mitchell testified that the A.I.M. Controls bank account has been used to pay the Mitchells' home mortgage. *Id.* at 55. Royce Mitchell testified that the A.I.M. Controls account has also been used to pay the Mitchells' personal home utility, AT&T, and Cablevision bills. Royce Mitchell Dep., ECF No. 131-5 at 151.

The Mitchells testified that A.I.M. Controls paid their personal income tax assessments in at least two separate years. Susan Mitchell Dep., ECF No. 131-4 at 57; Royce Mitchell Dep., ECF No. 131-5 at 160; ECF No. 131-5 at 216 (depicting a check made out to Susan Mitchell, signed by Royce Mitchell, with a memo line that states "2003 IRS Taxes loan"). Royce Mitchell also stated that he withdrew $10,000 from one of the Trusts to pay his personal taxes. Royce Mitchell Dep., ECF No. 131-5 at 150.

Moreover, when the IRS began investigating the Mitchells in connection with their personal tax assessments, the Mitchells hired the Chamberlain Hrdlicka law firm to represent them. Susan Mitchell Dep., ECF No. 131-4 at 57. A.I.M. Controls paid the attorney's fees incurred by Chamberlain Hrdlicka, according to an authorization filled out by Royce Mitchell. Susan Mitchell Dep., ECF No. 131-4 at 57; Credit Card Auth., ECF No. 131-5 at 28. The Mitchells assert that they had Croes's approval to authorize the transaction. Royce Mitchell Dep., ECF No. 131-5 at 149. Regardless, the Mitchells did not repay A.I.M. Controls for the admittedly personal expense, and they did not report the attorney's fees withdrawal as income on their individual tax return. *Id.* at 128–29.

During Royce Mitchell's deposition, he was asked to take out the credit cards that he then possessed. Royce Mitchell Dep., ECF No. 131-5 at 138–39. Royce Mitchell stated that he was carrying personal cards. *Id.* However, he removed three credit cards in the name of A.I.M. Controls from his wallet. *Id.*; ECF No. 131-5 at 206 (showing the three company credit cards that Royce Mitchell possessed at the time of his deposition). Royce Mitchell explained that he uses the three credit cards for business expenses, and that he has never used them for personal reasons. Royce Mitchell Dep., ECF No. 131-5 at 140.

At the time of their depositions, the Mitchells admitted that, in the past, they used A.I.M. Controls' or Trusts' bank accounts to fund their personal, household expenses. *E.g.*, Royce Mitchell Dep., ECF No. 131-5 at 146, 148. Yet in response to the government's Motion for Summary Judgment, the Mitchells argue that they "have never derived any benefit from 3920 [Anderson Road] or any other LLC asset." ECF No. 151 at 16.

To support their argument, the Mitchells attached as an exhibit a June 2019 letter from Croes regarding their use of a company credit card for personal expenses. Mitchells Ex. C, ECF No. 151-1 at 11. In the letter, Croes directs the Mitchells to review A.I.M. Controls' policy on the use of credit cards for personal expenses. *Id.* The policy states that A.I.M. Controls is not liable for an individual's personal expenses, and that any such expenses will be deducted from monies owed to that individual. *Id.* at 10. Croes's letter indicates that the Mitchells' personal credit card expenses are being deducted from the company's "minimum payment" to the Mitchells, which "represents accrued interest" on a $66,000 loan that Susan Mitchell made to the company. *Id.* at 11. Croes wrote that any charges exceeding that "interest payment" are "deducted from the loan principle." *Id.* Defendants did not, however, produce

any evidence showing that A.I.M. Controls was actually deducting the Mitchells' personal expenses from amounts it owed to them.

As of July 2025, Royce and Susan Mitchell were the only individuals who had received funds from the Trusts, excluding administrative trustee fees paid to Croes, and earlier, to William. Susan Mitchell Dep., ECF No. 131-4 at 10–11.

Susan Mitchell testified that the Mitchells have a personal bank account at Woodforest Bank. Susan Mitchell Dep., ECF No. 131-4 at 12. At the time of her deposition, she was not sure of the account's balance. *Id.* The Mitchells did not produce any account histories or bank statements related to their personal accounts.

#### *iv. The Anderson and Bluebonnet Properties*

The two properties at issue in this case are contiguous plots of land in Houston, Texas, located at 3916 Anderson Road and 3920 Anderson Road (collectively, the Anderson Properties).

In January 2004, the Mitchells purchased the land and building located at 3916 Anderson Road. 3916 Deed, ECF No. 131-3 at 65–70. The Mitchells testified that the property at 3916 Anderson Road was purchased using money obtained from refinancing their personal home. Susan Mitchell Dep., ECF No. 131-4 at 19–21; Royce Mitchell Dep., ECF No. 131-5 at 119. The property was originally titled in the Mitchells' names. 3916 Deed, ECF No. 131-3 at 65–70. According to the Mitchells, that was an error. Royce Mitchell Dep., ECF No. 131-5 at 111. In June 2017, they filed a Correction Warranty Deed to retitle the property to A.I.M. Controls. Susan Mitchell Dep., ECF No. 131-4 at 19–21; Correction Deed, ECF No. 131-3 at 71–73. The Correction Deed's effective date was backdated to the property's original purchase date. Correction Deed, ECF No. 131-3 at 71. A.I.M. Controls did

not pay the Mitchells consideration for retitling the property. Susan Mitchell Dep., ECF No. 131-4 at 19–21.

Despite the Mitchells' assertion that the property was errantly titled to them instead of A.I.M. Controls, the sale documentation does not clearly indicate that A.I.M. Controls was the true buyer. The Property Earnest Money Contract defines "Buyer" as "Royce E. Mitchell or his Assignee." ECF No. 151-1 at 56. It states that notices are to be sent to the Buyer at A.I.M. Controls' then-office on Willowbend Drive, with attention to "Royce Mitchell, C.E.O." ECF No. 151-1 at 61. Royce Mitchell is also listed "CEO" at the end of his signature. *Id.* at 63. The original deed lists "Royce E. Mitchell, and wife, Susan A. Mitchell" as "Grantees." 3916 Deed, ECF No. 131-3 at 65–70. Like the Earnest Money Contract, the original deed's only mention of "A.I.M. Controls" is in the "Grantees' address," which is reported as in care of A.I.M. Controls at its then-office. *Id.*

The Mitchells also cite two letters as evidence of the alleged deed mistake. Mitchells Ex. I, ECF No. 151-1 at 53–54. The first letter is from Croes, as trustee of A.I.M. Group and "Partner" of A.I.M. Controls. *Id.* The second is from William, as trustee of RESAM and Member of A.I.M. Controls. *Id.* Each letter states that the respective trustee approves of A.I.M. Controls' purchase of the building at 3916 Anderson Road, Houston, Texas 77053. *Id.* Both letters pre-date the purchase of the property. *Id.* Confusingly, both letters are addressed to Royce Mitchell at that very address—3916 Anderson Road—despite the fact that the property was not obtained until months after the letters were purportedly sent.

In late 2015, the Mitchells sought to expand A.I.M. Group by purchasing the land and building next door at 3920 Anderson Road. Pursuant to a Business Loan Contract with A.I.M. Controls, Susan loaned the company $66,000 at 0% interest, which A.I.M. Controls used to purchase the property. Susan Mitchell Dep., ECF

No. 131-4 at 32; Susan Mitchell Loan Contract, ECF No. 131-4 at 70. A.I.M Controls closed on the property at 3920 Anderson Road later that month. ECF No. 131-3 at 75–79. Susan Mitchell testified that A.I.M. Controls paid back the loan in approximately 2023. Susan Mitchell Dep., ECF No. 131-4 at 32.

Though A.I.M. Controls holds title to 3920 Anderson Road, Susan Mitchell and Royce Mitchell are listed as the proposed insureds for the "owner's policy of title insurance" in an August 2021 Commitment for Title Insurance. ECF No. 131-3 at 210.

A.I.M. Controls also held title to property at Bluebonnet Acres in Harris County, Texas. Bluebonnet Acres Deed, ECF No. 131-5 at 209–11. In March 2016, A.I.M. Controls, acting through Royce Mitchell, sold the Bluebonnet Acres property. *Id.*; Royce Mitchell Dep., ECF No. 131-5 at 158–59. The proceeds from the sale, totaling approximately $180,000, were deposited into the Trusts' accounts—not into those of A.I.M. Controls. Susan Mitchell Dep., ECF No. 131-4 at 41–42. According to Royce Mitchell's testimony, the funds were then used to purchase the property at 3920 Anderson Road. Royce Mitchell Dep., ECF No. 131-5 at 158–59.

#### *v. Income Tax Assessments Against the Mitchells*

There is a long history between the Mitchells and the IRS. Over a decade ago, the Mitchells petitioned the United States Tax Court to challenge their 2001 income tax assessment. Pursuant to an agreement between the parties, the Tax Court ordered that the Mitchells owed additional income tax for that year. ECF No. 131-1 at 134–36. The Mitchells signed the decision, and they did not appeal. *Id.* at 136.

The Mitchells failed to timely file income tax returns for 2003, 2004, 2005, and 2006. Crow Decl., ECF No. 131-1 at 124, 128.

Beginning in April 2013, the Secretary of the Treasury made assessments against the Mitchells for federal income taxes and penalties. As of December 12, 2025, the Mitchells have a total balance due in the amount of $721,644.97. ECF No. 131 at 9 (Royce Mitchell), 11–12 (Susan Mitchell), 13 (Joint). The tax assessments, penalties, and interest owed are set forth in three tables in the United States' Motion for Summary Judgment. *Id.*

The government has attached to its motion IRS Forms 4340, which show the taxes and penalties that have been assessed against the Mitchells. ECF No. 131-1 at 9–121. In support of its Motion, the government has also provided Declarations by three IRS Revenue Officers (or Revenue Agents)—Brett Crow, Miguel Pineda, and Chandy Thomas. Crow Decl., ECF No. 131-1 at 122–30; Pineda Decl., ECF No. 131-1 at 290–310; Thomas Decl., ECF No. 131-5 at 228–32. Of note, the Declaration of Officer Crow tabulates the taxes owed, explains that the Mitchells were given notice of their tax liabilities, and sets forth the dates on which the assessments were made. Crow Decl., ECF No. 131-1 at 122–30.

In August 2019, the IRS filed notices of tax liens against the Mitchells, separately and jointly, in the real property records of Harris County, Texas. ECF No. 131-3 at 138–43. Approximately ten months later, the IRS also recorded notices of federal tax liens against A.I.M. Controls as the alter ego of the Mitchells. ECF No. 131-3 at 144–46. Susan Mitchell testified that she is aware that there is a federal tax lien against the Mitchells' personal home. Susan Mitchell Dep., ECF No. 131-4 at 9. Additionally, the Mitchells conceded that they were already indebted to the IRS and in collections when they retitled the property at 3916 Anderson Road to A.I.M. Controls, which was prior to the purchase of 3920 Anderson Road. *Id.* at 19–21; Royce Mitchell Dep., ECF No. 131-5 at 111.

### *D. The Mitchells are liable to the United States for their unpaid taxes.*

The United States based its original computation of Defendants' tax liability on the Mitchells' own tax returns. The Secretary of the Treasury has now assessed taxes and penalties as shown on the Forms 4340 that have been attached to the government's motion. ECF No. 131-1 at 10–120.

An income tax assessment is "an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). A Certificate of Assessment and Payment (Form 4340) "is valid evidence of a taxpayer's assessed liabilities, and courts presume the correctness of IRS determinations of taxes owed." *United States v. McMahan*, No. 08-0007, 2008 WL 5114651, at *3 (S.D. Tex. Dec. 3, 2008) (citing, *e.g.*, *Perez v. United States,* 312 F.3d 191, 195 (5th Cir. 2002)). A Form 4340 "do[es] not record statutory accruals of interest or other additions until they are actually assessed." *Id.* It "merely record[s] assessments and payments and [is] only required to provide the taxpayer's identity, character of the liability assessed, taxable period and date, and amount of the assessment." *Id.* (citing Treas. Reg. § 301.6203–1; *United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir. 1989)).

The Mitchells object to the Form 4340s on the basis that the certifications attached therein do not state that the figures are true and accurate. ECF No. 151 at 9. However, the taxpayer "bears the burden of showing the assessments were arbitrary or erroneous." *McMahan*, 2008 WL 5114651, at *3 (quoting *Bar L Ranch, Inc. v. Phinney,* 426 F.2d 995, 998–99 (5th Cir. 1970)). Merely arguing that the IRS's certifications do not state that figures are true and accurate is not only insufficient to demonstrate a question of

material fact, but it is also false. Each Form 4340 is accompanied by the signed certification of an IRS Accounting Operations Manager. *E.g.*, ECF No. 131-1 at 120. The certification states that the "transcript . . . is a true and complete data compilation for the period stated of all assessments, abatements, credits, refunds, and advance or unidentified payments, and the assessed balance relating thereto . . . ." *Id.*

The Mitchells have not presented any competent evidence to rebut the amounts assessed. The Mitchells did not meet their burden to counter the presumption that the government's Form 4340s constitute valid assessments. Accordingly, the Form 4340s are accepted as evidence of the liabilities assessed against the Mitchells.

The court concludes that as of December 12, 2025,

1. Royce Mitchell is liable to the United States for his separately assessed 2001 and 2003 to 2006 federal income tax liabilities in the total amount of **$323,890.79**;
2. Susan Mitchell is liable to the United States for her separately assessed 2003 to 2006 federal income tax liabilities in the total amount of **$253,882.60**; and
3. Royce Mitchell and Susan Mitchell are jointly and severally liable for their 2007, 2008, and 2009 federal income tax liabilities in the total amount of **$143,871.58**.

### ***E. The government is entitled to collect on the lien.***

As a result of the Mitchells' delinquent income tax liability, the Mitchells' property is subject to a lien. When a taxpayer refuses or neglects to pay a tax upon demand, a lien under 26 U.S.C. § 6321 arises automatically and continues until the tax obligation is

satisfied. *McMahan*, 2008 WL 5114651, at *4; *United States v. Washington*, No. 09-3996, 2011 WL 3902737, at *9 (S.D. Tex. Sep. 6, 2011). The lien attaches to "'all property and rights to property, whether real or personal, belonging to such person' . . . as of or acquired after the date of assessment." *Id.* (quoting 26 U.S.C. §§ 6321–22).

"In order to collect upon its lien, the Government must be able to reach and foreclose on the [taxpayer's] real property . . . ." *McMahan*, 2008 WL 5114651, at *4. Ordinarily, property held by a corporate or business entity cannot be seized to satisfy an individual taxpayer's liability. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). "[T]he concepts of 'nominee' . . . and 'alter ego,'" however, provide "independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability." *Washington*, 2011 WL 3902737, at *18 (quoting *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000)). The nominee theory requires the court to determine the true beneficial or equitable ownership of property, while the alter ego theory focuses on the facts associated with a 'piercing the corporate veil' analysis. *Id.* (citation omitted). The court looks to state law to determine whether the company is the alter ego of the taxpayer, and whether the taxpayer has an interest in property to which the Government's tax lien attached. *Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 242 (5th Cir. 1990) (citations omitted).

The government seeks to foreclose on the Anderson Properties, which are in title held by A.I.M. Controls, not the Mitchells. Accordingly, in order to find that the Anderson Properties may be sold to satisfy the Mitchells' tax liability, the court must determine (1) that A.I.M. Controls is the alter ego of the Mitchells, and (2) that the Trusts merely nominally own A.I.M. Controls for its true owners—the Mitchells.

#### *i. A.I.M. Controls is the Mitchells' alter ego.*

The government argues that there is no genuine issue of material fact that A.I.M. Controls is the alter ego of the Mitchells. Texas law permits courts to pierce the corporate veil and "disregard the corporate fiction . . . when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Ledford v. Keen*, 9 F.4th 335, 339 (5th Cir. 2021) (quoting *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008)). The alter ego analysis focuses on the relationship between the corporation and the individuals alleged to have abused corporate formalities. *Zahra*, 910 F.2d at 245. The government need not show that the taxpayer committed actual fraud or acted with a specific intent to defraud. *Id.* (citing *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013)); *contra Tankersley v. Harvey*, No. 3:13-CV-4019, 2016 WL 9244212, at *3 (N.D. Tex. Jan. 29, 2016) (citing *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 n.4 (5th Cir. 1994)) (holding that Texas law requires actual fraud to pierce the corporate veil in *contract* claims). It must only show that "recognizing the separate corporate existence would bring about an inequitable result." *Id.*

"In a reverse veil-piercing case, the government attempts to hold a corporation's assets accountable for the liability of individuals who treated the corporation as their alter ego." *Zahra*, 910 F.2d at 243–44. Upon a sufficient showing "that the corporation is the alter ego of the debtor, the corporation is treated as the debtor and its property may be attached . . . ." *Id.*

The court evaluates a variety of factors to determine whether, under the totality of the circumstances, an alter ego relationship exists. The factors include:

1. Whether the taxpayer expended personal funds for the property;
2. Whether the taxpayer enjoyed the benefits of the disputed property;
3. Whether a close family relationship existed between the taxpayer and the corporation;
4. Whether the taxpayer exercised dominion and control over the disputed property;
5. Whether the corporation interfered with the taxpayer's use of the property;
6. Whether the taxpayer owned the corporation;
7. Whether the corporation observes corporate formalities;
8. Whether the corporation maintains bank accounts, books, and records;
9. Whether the corporation and the taxpayer commingled funds;
10. The corporation's capitalization;
11. Whether the taxpayer transferred assets, property, or funds to the corporation or vice versa;
12. Whether the corporation was organized by the taxpayer;
13. Whether the corporation operated as a traditional corporation;
14. Whether the corporation transacted the taxpayer's business; and
15. Whether the corporation paid the taxpayer's personal obligations.

*Washington*, 2011 WL 3902737, at *18 (S.D. Tex. Sept. 6, 2011) citing *Century Hotels v. United States*, 952 F.2d 107, 110 & n.5 (5th Cir. 1992)). "[W]hether a business enterprise is an LLC or a corporation is a distinction without a difference" in the context of alter ego and veil piercing. *In re Moore*, 379 B.R. 284, 289 n.4 (Bankr. N.D. Tex. 2007).

The government has demonstrated that there is no genuine issue of material fact as to whether A.I.M. Controls is the alter ego of the Mitchells. There is a close relationship between the Mitchells and A.I.M. Controls. The Mitchells founded A.I.M. Controls in 1992. Five years later, just prior to registering A.I.M. Controls as an LLC, the Mitchells formed the Trusts. The Mitchells transferred the entirety of their ownership interests in A.I.M. Controls to the Trusts. The Mitchells are the managers of A.I.M. Controls, acting with "complete authority . . . for [the company's] day to day operations" on behalf of the member–Trusts. Mitchells Ex. A, ECF No. 151-1 at 4. In addition to taking on the roles of managers of A.I.M. Controls on behalf of the Trusts, the Mitchells are at the top of the company's internal corporate structure. Royce Mitchell serves as company's manager or CEO, and Susan Mitchell serves as office manager. Together, the Mitchells are responsible for hiring and firing employees and managing company finances. The Mitchells are the only two signatories on A.I.M. Controls' bank accounts. Royce Mitchell's signature is stamped on every check issued by A.I.M. Controls, including on checks written to the Mitchells themselves.

The Mitchells have comingled their funds with those of A.I.M. Controls. The Mitchells admit that they have used A.I.M. Controls' bank accounts to cover some of their personal expenses, including treatments at nail and hair salons, movie tickets, income tax liabilities, legal representation, and home utilities. All of A.I.M. Controls' profits flow directly into the Trusts, which have then been used to purchase the vehicles driven exclusively by the Mitchells. The Mitchells personally authorized the transfer of funds from the Trusts to complete the purchases. They are the only ones with keys to the vehicles. The Mitchells admit to using company credit cards to purchase gas for those vehicles, and they admit to using the vehicles for both business and personal use.

They do not consistently maintain mileage logs to account for business use.

The Mitchells expended at least some of their personal funds to purchase assets held by A.I.M. Controls—the Anderson Properties. Additionally, the Mitchells exercise physical control over the Anderson Properties. In order to obtain documents responsive to the government's discovery requests, Croes—the trustee of the Trusts that are members of A.I.M. Controls—had to be let into the company's offices by Royce Mitchell.

The government met its burden of showing that there is no genuine issue of material fact that the Mitchells have abused corporate formalities such that it would be inequitable to treat A.I.M. Controls as separate from the Mitchells. To defeat the government's Motion, the Mitchells, Croes, and A.I.M. Controls must show the existence of a genuine issue for trial.

In response to the government's Motion, the defendants do not dispute the government's evidence. They merely argue that day-to-day management of the company was properly delegated to the Mitchells as managers, and that the Mitchells act on behalf of the company at the direction of Croes. ECF No. 147 at 6; ECF No. 151 at 10–12. Further, they argue that any failure to follow corporate formalities should be disregarded as mere "mistakes"—simple errors that are "common to small, closely held businesses." ECF No. 147 at 7; ECF No. 151 at 12. A.I.M. Controls argues, without support, that payment of the Mitchells' medical bills and the Mitchells' use of company vehicles are legally proper. ECF No. 147 at 10. The Mitchells and Croes point to the company's policy on credit card use and the letter from William about that policy as evidence that all "mistakes in distribution of funds . . . .were corrected by the Trustee/s." ECF No. 151 at 11.

The fact that A.I.M. Controls has a policy forbidding the use of company credit cards for personal expenses is not sufficient to raise a question of material fact. The defendants did not point to any evidence to show that the policy was enforced. There is no evidence that the Mitchells ever paid A.I.M. Controls back for the personal expenses charged to company accounts, and there is no evidence that such expenses were *actually* deducted from any amounts owed to the Mitchells. Accordingly, the Mitchells and A.I.M. Controls failed to show the existence of a genuine issue of fact as to whether A.I.M. Controls is the Mitchells' alter ego.

The government has established that A.I.M. Controls is the alter ego of the Mitchells. If the Mitchells had an ownership interest in A.I.M. Controls, the analysis could stop here. However, "Texas courts will not apply the alter ego doctrine to directly or reversely disregard the corporate fiction unless one of the 'alter egos' [has an ownership interest] in the other." *Zahra Spiritual Tr. v. United States*, 76 A.F.T.R.2d 95-7870, at ¶ 6 (W.D. Tex. 1992) (citing *Zahra*, 910 F.2d at 246). Though the court has concluded that A.I.M. Controls is the alter ego of the Mitchells, it is not owned by the Mitchells. The Mitchells transferred their ownership interests in A.I.M. Controls to the Trusts. Therefore, the court cannot apply the alter ego doctrine to sell the Anderson Properties unless it also determines that the Mitchells have an ownership interest in the Trusts.

***ii. The Trusts hold the Mitchells' interests in A.I.M. Controls as mere nominees.***

The government argues that there is no genuine issue of material fact that the Mitchells are the true beneficial owners of A.I.M. Controls, and the Trusts' nominal ownership should be disregarded. If a taxpayer is the true beneficial owner of property to which a third party has legal title, the property may nevertheless "be levied upon as a nominee of the taxpayer." *Oxford*

*Cap.,* 211 F.3d at 284. To determine whether a nominee relationship exists, the court considers the following factors:

1. No consideration or inadequate consideration paid by the nominee;
2. Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;
3. Close relationship between transferor and the nominee;
4. Failure to record conveyance;
5. Retention of possession by the transferor; and
6. Continued enjoyment by the transferor of benefits of the transferred property.

*Washington*, 2011 WL 3902737, at *19 (citing *Oxford Cap.*, 211 F.3d at 284 n. 1).

Here, the "nominees" are the Trusts, and the subject property is A.I.M. Controls. The Trusts did not pay consideration to receive the Mitchells' ownership interests in A.I.M. Controls, and the transfer of their ownership interests to the Trusts did not reduce the Mitchells' level of control over the company. The Mitchells have a close relationship with the Trusts. The Mitchells are not the trustees nor the beneficiaries of the Trusts, but they have held themselves out to be the Managing Partners of the Trusts. All of A.I.M. Controls' profits flow into the Trusts, and from those profits, the Mitchells receive distributions and purchase vehicles for their exclusive use and enjoyment. Additionally, although the Mitchells are not beneficiaries of the Trusts, they are the only parties who have received any direct financial benefits from them, aside from the negligible yearly trustee fees paid to Croes.

As to the second factor, while the government asserts that the Mitchells transferred their ownership interests in A.I.M. Controls as a tax avoidance strategy, the Mitchells argue that they did so for estate-planning purposes. The court resolves this dispute in favor of the Mitchells and credits their estate-planning rationale. Regardless, the Mitchells' original intent does not change the fact that they have *actually* used the Trusts and their ownership of A.I.M. Controls as a tax avoidance tool, all while maintaining de facto control over A.I.M. Controls. The mere fact that the Mitchells created the Trusts for estate-planning purposes does not create a genuine dispute of material fact.

The government has met its burden of demonstrating the absence of a genuine issue of material fact as to whether the Mitchells are the true beneficial owners of A.I.M. Controls. Accordingly, the Mitchells, Croes, and A.I.M. Controls must designate specific facts that show that a genuine issue exists. They have failed to do so. The defendants largely rehash the arguments described in the previous section—that Croes, as trustee of the Trusts, makes all decisions for the business entities. ECF No. 147 at 6–8, 10; ECF No. 151 at 10–14. ECF No. 151 at 14. Again, the defendants do not dispute the underlying evidence that supports the government's argument. The defendants have not met their summary judgment burden.

The Trusts are nominees of the Mitchells, holding formal ownership of A.I.M. Controls. However, the Mitchells enjoy beneficial ownership of A.I.M. Controls. Such an interest is sufficient to equate the Mitchells with members of the LLC for the purposes of disregarding the corporate fiction of A.I.M. Controls under the alter ego theory. Because the government has shown that there is no genuine dispute of material fact that the Mitchells are the alter ego of A.I.M. Controls and that the Mitchells are the true beneficial owners of A.I.M. Controls, the government may

pierce the corporate veil to satisfy its assessments against the Mitchells. The government is entitled to levy upon A.I.M. Controls' assets, including the Anderson Properties, to satisfy the Mitchells' tax income tax liability.

***iii. The Mitchells are also beneficial owners of the Anderson Properties.***

Even if A.I.M. Controls was not the alter ego of the Mitchells, or if the Mitchells lacked ownership interest in the Trusts, it would still be appropriate to apply the nominee theory to levy upon the Anderson Properties in satisfaction of the Mitchells' tax liability.

Applying the nominee theory in this context, there is no question that A.I.M. Controls is merely the nominal owner of the Anderson Properties, while the Mitchells retain beneficial ownership of the properties. The Mitchells located the Anderson Properties, negotiated the sales, and authorized the disbursement of purchase funds. The Mitchells even expended some of their personal funds to purchase both properties. They refinanced their own home to purchase the property at 3916 Anderson. More than a decade later, Susan Mitchell contributed $66,000 in the form of a no-interest loan to A.I.M. Controls to purchase the adjacent property at 3920 Anderson. Additionally, the property at 3916 Anderson was titled to the Mitchells for more than thirteen years. It was not until after the IRS levied upon the Mitchells assets that the Mitchells retitled the property to A.I.M. Controls. The Mitchells were not paid any consideration for the retitling. Moreover, the transfer of title did not alter the Mitchells' use or enjoyment of the Anderson Properties. Since 2004, A.I.M. Controls has operated from the site, free of rent payments and under the Mitchells' physical control. With these facts, the government has shown that there is no genuine issue of material fact as to whether the Mitchells are the true beneficial owners of the Anderson Properties.

The court next considers whether the Mitchells, Croes, and A.I.M. Controls have shown that there is a genuine issue of material fact as to whether the Mitchells are the true beneficial owners of the Anderson Properties. A.I.M. Controls asserts that "[t]he real estate in issue is legally held by A.I.M. Controls . . . and is necessary for its operation . . . ." ECF No. 147 at 8. Such facts are insufficient to show the existence of a genuine issue of material fact. There is no dispute that A.I.M. Controls is the legal owner of the Anderson Properties, and there is no dispute that the properties are used to house A.I.M. Controls' business operations.

The Mitchell and Croes merely point to property records and argue that the Anderson Properties were specifically acquired for A.I.M. Controls. ECF No. 151 at 15. While they concede that 3920 Anderson was titled to the Mitchells in their individual capacity, they assert that it was not purchased for the Mitchells' benefit. *Id.* (citing Mitchells Ex. I, ECF No. 151-1 at 53–54). Further, the Mitchells and Croes assert that "the Mitchells have never derived any benefit" from the Anderson Properties. *Id.* at 16. That assertion is conclusory and not based on evidence. The Mitchells and Croes have not demonstrated an issue of material fact as to whether the Mitchells are the true owners of the Anderson Properties.

Legal title to the Anderson Properties is held by A.I.M. Controls. However, the government has shown that there is no genuine issue of material fact as to whether the Mitchells are the true beneficial owners of the Anderson Properties. Therefore, the Anderson Properties may be levied upon as nominees of the Mitchells. The Anderson Properties may be sold to satisfy the Mitchells' income tax liabilities.

***F. The government's Motion for Summary Judgment should be granted.***

There is no genuine dispute as to any material fact that (1) the Mitchells are liable to the United States for the income tax assessments against them; (2) A.I.M. Controls is the alter ego of the Mitchells, and the Trusts are their nominees, so A.I.M. Controls is liable for the Mitchells' income tax liabilities; and (3) the liens for the Mitchells' income tax liabilities attach to the Anderson Properties. Accordingly, the government's Motion for Summary Judgment, ECF No. 131, should be **GRANTED**.

***5. Motion for Sanctions and to Remove Government as Counsel***

The Mitchells move for sanctions against the government and seek removal from the case of the government's counsel, Ms. Notinger. ECF Nos. 121, 162. The Mitchells have not shown that the government or its counsel have engaged in any sanctionable conduct. Throughout this case, the government has done nothing more than assert its theory of the case. Accordingly, the Mitchells' Motion for Sanctions, ECF No. 121, and Motion to Remove Government as Counsel, ECF No. 162, are **DENIED**.

***6. Conclusion***

As to the discovery and procedural motions, A.I.M. Controls' Motion to Undeem Admissions, ECF No. 133 is **DENIED**. The Mitchells and Croes's Motion to Undeem Admissions, ECF No. 134, is **GRANTED in part** and **DENIED in part as moot**. The Mitchells and Croes's Letter Motion for Discovery, ECF No. 145, is **TERMINATED as moot**. The Mitchells and Croes's Motion for Leave to File Late Response to the government's Motion for Summary Judgment, ECF No. 155 is **GRANTED**. The government's Motions to Strike, ECF Nos. 157 and 161, are **GRANTED in part**. A.I.M. Controls' Motion for Leave to File Exhibits A and B, ECF No. 168, is **GRANTED**.

Because the government has not engaged in sanctionable conduct, the Mitchells' Motion for Sanctions, ECF No. 121, and Motion to Remove Government as Counsel, ECF No. 162, are **DENIED**.

The court recommends that the Mitchells' Motion to Dismiss, ECF No. 130, be **DENIED**. The court also recommends that the government's Motion for Summary Judgment, ECF No. 131, be **GRANTED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on August 5, 2026.

Peter Bray
United States Magistrate Judge